U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL - 1 2005

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **MILDRED KNIGHTEN** | **CIVIL ACTION NO. 03-1930** |
| **VERSUS** | **JUDGE HICKS** |
| **STATE FAIR OF LOUISIANA** and **SAM GIORDANO** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Pending before the Court is a motion for summary judgment filed by the defendants State Fair of Louisiana and Sam Giordano (collectively referred to as "State Fair"). [Doc. No. 39]. Plaintiff Mildred Knighten ("Knighten") alleges a claim of retaliation as a result of her previous sexual discrimination lawsuit against State Fair. Knighten withdrew her sex discrimination claim in her opposition, therefore only the retaliation claim will be addressed in this ruling. See, Memorandum in Opposition, Doc. No. 47, p. 3. For the following reasons, the Court denies the defendants' motion [Doc. No. 39].

## BACKGROUND

Plaintiff, Mildred Knighten, began working for the State Fair in 1995. As of 2001 Knighten's job title was "Admission and Parking Director." [Π Ex. C]. Her job duties included security, advance tickets, groups sales and maintenance. Id. In June 2001, Knighten filed claims of sexual harassment and discrimination both internally and with the EEOC against Sam Giordano, the general manager. In August 2001, the claim was

settled. The agreement included a provision that no retaliation would be taken against her. [Knighten Deposition, π Ex. A, pp. 62-63].

In summer of 2002, Knighten was moved from the main administration building to the maintenance building. [Knighten Deposition, π Ex. A, p. 74]. She was given an additional duty of inventory control with maintenance. Her other job duties remained the same. [Giordano Deposition, π Ex. B, p. 21]. Knighten felt that moving her to the "dirty shop" was an attempt by Giordano to embarrass and humiliate her. [Knighten Deposition, π Ex. A, p. 80]. Knighten also alleges that after the settlement she was excluded from meetings that she once took part in. [Knighten Deposition, π Ex. A, pp. 88-91]. In October 2002, Knighten was removed from her security duties. [Id., at 69.]

State Fair employs few permanent employees. The basic organizational structure consists of: (1) General Manger, Sam Giordano; (2) Assistant Manager, Chris Giordano; (3) 4 "Directors"; (4) one Assistant Director; and (5) an Administrative Assistant. [Π Ex. C.] In the summer of 2002, Giordano removed himself as Knighten's supervisor and appointed Mary Gaspar, Administrative Assistant, as Knighten's supervisor. The other directors were supervised by Chris Giordano, Assistant Manger to his father Sam Giordano. [Job Descriptions, π Ex. C; Knighten Deposition, π Ex. A, p. 92].

Knighten was terminated in November of 2002 following the 2002 State Fair. State Fair alleges that because of poor attendance at the fair, money was lean and layoffs were necessary. Giordano determined which jobs were non essential. [Giordano Deposition, π Ex. B, pp. 31-32]. The following actions were taken against the permanent employees: (1) five salaried employees worked one week at no pay (Sam Giordano, Chris Giordano, Mary Gaspar, Lisa Washington and Tommy Lacy); (2) three permanent employees were laid off

(Plaintiff, Dena Skains[1], and Paige Powell); and (3) one temporary employee was laid off (Cassandra Cox). [Giordano Deposition, π Ex. B, pp. 12-18]

Of the three permanent employees that were laid off, Knighten was the only one that was not asked to come back. [Giordano Deposition, π Ex. B, pp. 12, 28]. State Fair did ask her to work one event, the Independence Bowl, but did not ask her to come back to her former position. [Id., at 13]. When Skains declined to return, her position was filled by a new permanent employee Lindsey Hearne. State Fair has also hired another permanent employee, Peggy Swindle, since the time of Knighten's layoff. [Id., pp. 18-19].

State Fair contends that Knighten's duties were absorbed by Gaspar, therefore, her employment was no longer needed. State Fair further contends that her position has never been filled. [Giordano Deposition, Ex. B, p. 15]. When Mary Gaspar took over Knighten's maintenance duties, she was not moved to the maintenance building. [Giordano Deposition, Ex. B, p. 23]. State Fair claims that her other duties required her to be in the main building. Id.

Knighten filed suit against State Fair for retaliation against her as a result of her sexual harassment lawsuit against Giordano. A jury trial is set for August 15, 2005. State Fair filed this motion for summary judgment contending that Knighten was laid off as part of an overall scheme to reduce costs

.

---

[1]Skains was actually only laid off for one month, but found other employment and did not return. [Giordano Deposition, Ex. B, p. 12].

## LAW AND ANALYSIS

I. **Summary Judgment Standard**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). See also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations,

unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075). See also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., 477 U.S. at 248, 106 S. Ct. at 2510.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted). However, if Plaintiff fails to establish a prima facie case, Bauer v. Albermarle Corp., 169 F.3d 962, 966 (5th Cir. 1999), or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to counter with additional evidence of pretext or motivating factor, summary

judgment may be properly granted. Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). With these principles in mind, we now turn to a review of the specific claim at issue.

## II. Retaliation

To establish a prima facie case of a Title VII retaliation claim, a plaintiff must show the following: (1) she engaged in protected activity; (2) there was an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. Ackel v. National Communications, Inc., 339 F.3d 376 (5th Cir. 2003). Knighten argues she has demonstrated a prima facie case by showing: (1) filing and settlement of lawsuit was a protected activity; (2) her termination is an adverse action; and (3) presenting acts which establish causal link between the protected activities and the adverse action. The first two prongs are not contested. However, State Fair argues that there is too much time between Knighten's lawsuit and her termination to establish "temporal proximity" and that Knighten has presented no other evidence that her termination is related to her lawsuit.

In order to establish a causal connection, plaintiffs must only show "some evidence" between the protected activity and the adverse action. Ackel, 339 F.3d at 385; Cristia v. Sys. Eng'g & Sec., Inc., 2004 U.S. Dist. LEXIS 15970, 10 Wage & Hour Case. 2d (BNA) 973 (E.D. La. 2004). Temporal proximity may be evidence of a casual connection between the protected activity and the adverse action. The Supreme Court has even acknowledged that temporal proximity alone may be sufficient to prove casual connection if the time period is "very close." Clark County School District v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001). The time period sufficient as "very close" varies,

but courts have often found periods of two months to be sufficient to establish casual connection without other evidence. Kimble v. Ga. Pac. Corp, 245 F. Supp. 2d 862 (M.D. La. 2002); Washington v. Town of Gramercy, 2004 U.S. Dist. LEXIS 345 (E.D. La. 2004). Periods longer than a year are insufficient to provide a causal connection without other evidence. Monroe v. Oncor Energy Delivery Co., 2003 U.S. Dist LEXIS 14728 (N.D. Tex. 2003) (15 months is "far too long"); Williams v. Cytec Indus., 2005 U.S. Dist. LEXIS 656, 176 L.R.R.M. (BNA) 2614 (E.D. La. 2005) (17 months insufficient).

The temporal proximity between Knighten's suit and her termination is insufficient alone to prove casual connection. More than 15 months passed between the settlement of her lawsuit (August 2001) and her termination (November 2002). However, this is not the only evidence that plaintiff presents. Knighten also alleges acts of seclusion and demotion following the settlement. Knighten has also shown that she was the only employee permanently laid off. Therefore, the Court finds that plaintiff has presented some evidence of a casual link and that she has established a prima facie case of retaliation.

Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a "legitimate non retaliatory reason" for the actions. Rachid, 376 F.3d 305 (5th Cir. 2004); Oby v. Baton Rouge Marriott, 329 F. Supp. 2d 772, 785 (M.D. La. 2004). State Fair has alleged that Knighten was laid off because of financial difficulties following a low attendance year at the 2002 State Fair. Giordano determined which jobs were non essential. Decisions to eliminate job positions have been long been recognized as a legitimate, non-discriminatory reason for terminating an employee. E.E.O.C. v. Tex. Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996). The courts are not in the business of second guessing business judgments. Walton v. Bisco Indus. Inc., 119 F.3d 368, 372

(5th Cir. 1997). Therefore, the Court finds that the defendant has articulated a "legitimate non retaliatory reason" for her termination.

When the defendant has articulated a legitimate non retaliatory reason for an adverse action, the plaintiff must then produce evidence that either: (1) the offered reason is untrue and merely pretext for the retaliation; or (2) even though the offered reason is true, the retaliation is a motivating factor in her termination. Rachid, 376 F.3d 305 (5th Cir. 2004); Oby, 329 F. Supp. 2d 772 (M.D. La. 2004). Knighten again points to the acts which followed the settlement of her claim. She was isolated to another building, forced to report to an administrative assistant, excluded from meetings she once took part in, removed from duties and finally terminated. Knighten was the only "director" that was laid off. The other two permanent employees that were laid off were asked to return. Knighten was not asked to return to her position. Furthermore, when Skains declined to return, her position was filled with a new permanent employee. The Court finds that Knighten has presented enough evidence to show that a genuine issue of material fact exists as to whether the legitimate reason offered is true or whether her lawsuit may have been a motivating factor in her termination.

Once the plaintiff has shown that the legitimate non retaliatory reason is untrue or that the protected activity was a motivating factor in the decision to terminate, the defendant still has an opportunity to prove that the same decision would have occurred regardless. Rachid, 376 F.3d 305 (5th Cir. 2004). In this case, State Fair alleges that the layoffs would have occurred in the same manner regardless of Knighten's prior claims and law suit. However, the layoffs were not considered prior to her lawsuit. The decision as to which positions were non essential was not made prior to her lawsuit. Her lawsuit claimed that Giordano sexually harassed her and Giordano made the decisions regarding

the layoffs. The Court finds that State Fair has not presented adequate evidence at this time to prove that the same decision would have been made regardless of Knighten's lawsuit.

## CONCLUSION

The Court finds that the plaintiff has presented enough evidence to survive summary judgment. This is a borderline case with much emphasis on the testimony of Knighten and Sam Giordano. The Court can not judge credibility of witnesses on a motion for summary judgment. Because of the organizational structure of State Fair and the amount of control Sam Giordano holds as the general manager, the Court finds that the plaintiff has demonstrated a genuine issue of material fact as to whether State Fair's articulated non retaliatory reason is pretext for retaliation or whether her lawsuit against Giordano was a motivating factor in her termination. Therefore, summary judgment is not proper at this time.

Therefore:

IT IS ORDERED that defendants' State Fair of Louisiana and Sam Giordano's "Motion for Summary Judgment" [Doc. No. 39] shall be **DENIED**.

Shreveport, Louisiana, this ___ day of July, 2005.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE