# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

**MILDRED KNIGHTEN**                  *      **CIVIL ACTION NO. 03-1930**

**Versus**                                        *      **JUDGE HICKS**

**STATE FAIR OF LOUISIANA, ET AL.**     *      **MAGISTRATE JUDGE HAYES**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Summary Judgment[1] (Doc. #77) filed by defendant, State Fair of Louisiana. For the reasons stated below, it is recommended that the motion be **DENIED**.

Plaintiff, Mildred Knighten ("Knighten"), filed suit against her former employer, State Fair of Louisiana ("State Fair"), under Title VII of the Civil Rights Act of 1964, as amended, and Louisiana Revised Statute 23:967. Knighten alleges that she was discharged in retaliation in November, 2002. Defendant argues that Plaintiff's complaint should be dismissed on the grounds that the State Fair of Louisiana is not an employer for purposes of Title VII or La. R.S. 23:967 because it did not employ the requisite number of employees. Defendant also argues that it is not subject to suit under Louisiana law because it is a not-for-profit corporation. Plaintiff opposes the motion.[2]

## LAW AND ANALYSIS

**Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the Court shows that no

---

[1] Defendant has entitled this motion as a Motion For Judgment as a Matter of Law. Under F.R.C.P. 56, the proper title is a Motion for Summary Judgment and this motion is therefore treated as such.

[2] The Court recognizes that Plaintiff's Opposition was untimely filed and deficient; those issues are addressed under separate Memorandum Order.

genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## Title VII

Title VII of the Civil Rights Act of 1964, as amended, defines an employer as follows:

(b)  The term "employer" means a person engaged in industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ...

42 U.S.C. § 2000e(b).

The Supreme Court has held that the time period used for the determination as to whether an entity is an employer under TitleVII (hence, application to current or preceding calendar year

inquiry under 42 U.S.C. § 2000e(b)) is based on the time of the alleged discriminatory or retaliatory conduct. *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 205, 117 S. Ct. 660, 663 (1997) (recognizing that if alleged retaliation occurred in 1990, the "current and preceding calendar year for purposes of the retaliatory discharge claim are 1990 and 1989"). In this case, the alleged retaliatory discharge occurred in 2002. Therefore, the relevant time period for determining if the State Fair is an employer is 2001 and 2002.

Defendant argues that no more than eight to ten people were employed by the State Fair during calendar years 2001 and 2002, and therefore Defendant is not an employer under Title VII. Defendant states that the eight to ten individuals were the "only individuals for which payroll records were maintained, who received paychecks from the State Fair of Louisiana, and for whom federal, state and local withholdings were made." Plaintiff concedes that Defendant did not employee fifteen or more employees unless temporary employees are included in the total. Defendant concedes that if the temporary employees are considered employees for the purposes of Title VII, Defendant would be considered an employer under Title VII. Defendant states that there were a significant number of temporary workers assigned to the State Fair; however, only 16 of those temporary workers were assigned in twenty or more calendar weeks in 2001 or 2002. Therefore, the issue is whether the 16 temporary employees are considered to be employees of the State Fair of Louisiana for purposes of Title VII.

> It is well-settled in this Circuit that we determine whether a plaintiff is an "employee" for Title VII purposes by applying the hybrid economic realities/common law control test first advanced in *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979), and first adopted by this Court in *Mares v. Marsh,* 777 F.2d 1066, 1067-68 (5th Cir.1985). *See also Broussard,* 789 F.2d at 1160. Although other factors are relevant, the most important factor is "the extent of the employer's right to control the 'means and manner' of the worker's performance." *Bloom v. Bexar County, Tex.,* 130 F.3d 722, 726 (5th Cir.1997) (citation omitted); *see also Broussard,* 789 F.2d at 1160. The factors pertinent to this inquiry include:

> (1) ownership of the equipment necessary to perform the job; (2) responsibility for costs associated with operating that equipment and for license fees and taxes; (3) responsibility for obtaining insurance; (4) responsibility for maintenance and operating supplies; (5) ability to influence profits; (6) length of the job commitment; (7) form of payment; and (8) directions on schedules and on performing work. *Broussard,* 789 F.2d at 1160.

*Arbaugh v. Y&H Corp.*, 380 F.3d 219, 226 (5th Cir.2004).

> The right to control, although the most significant factor, is not alone determinative. *Spirides,* 613 F.2d at 831. According to *Spirides,* additional factors that are relevant include:
> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.
> *Id.* at 832.

*Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir.1986).

<u>Ownership of Equipment</u>

The State Fair owned all equipment used by the temporary employees. This factor favors the workers' being employees of State Fair.

<u>Responsibility for Operating Costs of Equipment, Licenses and Taxes</u>

Since the State Fair owned all the equipment, it also was responsible for all costs associated with the equipment. This factor also favors the workers' being employees of State Fair.

<u>Insurance Responsibility</u>

The temporary agency paid for workers compensation and unemployment insurance for

the temporary employees. However, Plaintiff contends that the temporaries are "statutory employees" of the State Fair under Louisiana law and workers' compensation bar would likely apply to the temporary employees. Based on the record before the Court, this factor is neutral because even though the temporary agency paid for workers compensation and unemployment insurance, the workers could be found to be statutory employees of the State Fair under Louisiana law.

Maintenance and Operating Supplies

The State Fair paid all maintenance and provided all supplies. This factor favors the workers' being employees of State Fair.

Ability to Influence Profits

This factor is not applicable in this case.

Length of Job Commitment

Plaintiff states that some of the temporaries "held full-time, long term positions. The remainder worked at the special events and State Fair. While the actual time of their employment was fairly short, it was for the full duration of the event and it was often recurring yearly work." Some of the temporary workers worked on a full-time basis, including maintenance workers and an administrative worker. At various times, there have been temporary workers whom the State Fair considered to be on full-time assignment; however, the State Fair contends the number of workers in that situation would not have exceeded "approximately three." This factor has aspects which weigh in favor of both positions and is therefore neutral.

Form of Payment

The temporary employees were paid by the temporary agency. The State Fair did not maintain payroll records for the temporary employees. In addition, they received no paychecks

from the State Fair and were not subject to any federal, state, or local withholdings made by the State Fair. This factor weighs against the workers' being employees of State Fair.

Directions on Schedules and Performing Work

The State Fair provided day-to-day supervision, scheduling and work direction. This factor favors the workers' being employees of State Fair.

Kind of Occupation, Work Done Under Supervision

Most of the temporary workers were low skill employees and the work was not done "by a specialist without supervision." Nine of sixteen temporary employees worked in the maintenance department; one worked in an administrative capacity; one worked in livestock maintenance; and others worked in security. The State Fair directed the work on a daily basis, including day-to-day supervision, setting of hours and direction of work. This factor weighs in favor of the workers' being employees of State Fair under Title VII.

Skill Required

The temporary positions were low-skill positions making the workers more likely to be employees of State Fair.

Manner In Which The Work Relationship Is Terminated

The State Fair could not directly fire a temporary employee; however, Plaintiff contends that whether an employee worked at the State Fair was the State Fair's decision. In the event the State Fair needed a temporary worker, the State Fair would contact the temporary agency. If the State Fair no longer needed or wanted a temporary worker, the State Fair would simply notify the temporary agency that the service of that worker was no longer needed, and there is no indication that it was obligated to give the agency a reason for the termination. Thus, the State Fair indirectly had some control over termination of workers; however, it is not clear whether the

State Fair could replace unsatisfactory individual workers with other temporary workers, or whether they were limited to terminated a position. The undersigned is unable to make a determination regarding this factor based on the record herein.

Annual Leave

Defendant states that the temporary workers were not eligible for vacation benefits. The factor favors the workers' not being employees of State Fair.

Integral Part of the Business

The temporary employees ran the special events and the state fair, making them an integral part of the business. Therefore, this factor weighs in favor of the workers' being employees of State Fair.

Retirement Benefits

Temporary workers were not eligible for retirement benefits. This factor favors the workers' not being employees of State Fair.

Social Security Taxes

The temporary agency paid all temporary employees and paid all applicable taxes, weighing against employment status for the temporary workers.

Conclusion

The facts that the temporary agency paid the workers' wages, taxes, and insurance, and the fact that the workers earned no leave time or annual benefits favors the workers' not being employees of State Fair. However, the facts that the work in question was unskilled, was an essential part of the State Fair's business, and the facts that the State Fair owns all equipment used by the temporary workers and is responsible for any operating costs, licenses and taxes associated with that equipment, favors the workers' being employees of the State Fair.

7

More importantly, the most significant factor, control of the workers, weighs in favor of the workers' being considered employees of State Fair under Title VII. The workers were under the direct control of the State Fair as to the time place and manner of their employment, and the State Fair not only had the right to control these aspects of the work, but actively exercised that control. The majority of factors weigh in favor of the temporary workers' being considered employees of the State Fair under Title VII. Therefore, the undersigned finds that the temporary workers are employees of the State Fair for Title VII purposes, that the State Fair did employ the requisite number of employees during the time period in question, and that it is therefore an employer under Title VII. It is recommended that summary judgment on this basis be DENIED.

<u>La. R.S. 23:967</u>

Under Louisiana's Whistleblower Statute, an employer may not retaliate against its employees who advise an employer of violations of law. La. R.S. 23:967. The Whistleblower Statute does not define "employer." Defendant argues that the definition of "employer" found in La. R.S. 23:302 should apply to the Whistleblower Statute.

Under Louisiana Revised Statute 23:302 an employer is defined as:

(2) "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... This Chapter shall not apply to the following: ...

(b) Employment of an individual by a private educational or religious institution or any nonprofit corporation ....

La. R.S. 23:302.

Defendant argues that it is not an employer under Louisiana law by virtue of this statute

because it does not meet the definition of "employer" under La. R.S. 23:302(2) and because it is a nonprofit corporation, which is excluded from being an "employer" under La. R.S. 23:302(2)(b). Plaintiff disagrees and argues that the definition of "employer" found in La. R.S. 23:302 does not apply to La. R.S. 23:967, the Whistleblower Statute.

Defendant's not-for-profit status under Louisiana law was previously the subject of a Motion to Dismiss filed on October 31, 2003. On April 8, 2004, Magistrate Judge Payne issued his Report and Recommendation and concluded that the definition of employer found in La. R.S. 23:302 should not be applied to Plaintiff's claim under La. R.S. 23:967. Noting the lack of objections, Judge Hicks adopted the recommendation of Magistrate Judge Payne on May 4, 2004. In the current Motion for Summary Judgment, Defendant reurges the not-for-profit status argument. Defendant states that at the pretrial conference, the Court indicated that it may be inclined to visit these issues under Louisiana law.

After reviewing both parties' arguments, as well as the cited cases, this Court agrees with the court's prior ruling adopting Judge Payne's report and recommendation and recommends that the decision declining to extend the definition of employer found in La. R.S. 23:302 to La. R.S. 23:967 be reaffirmed. In addition to the reasoning stated in Judge Payne's opinion, the undersigned notes that the majority of the cases cited by Defendant are unpublished opinions with no precedential value *See Jackson v. Xavier University of Louisiana*, 2002 WL 1482756 (E.D. La. 2002); *Jones v. J.C.C. Holding Co.*, 2001 WL 537001 (E.D. La. 2001); *Dronet v. Lafarge Corp.*, 2000 WL 1720547 (E.D. La. 2000). The *Langley* case was a published case from the Middle District of Louisiana; however, the pertinent language is quoted from the previously cited unpublished decisions with no further analysis. *Langley v. Pinkerton's, Inc.*, 220 F.Supp.2d 575 (M.D. La. 2002). More importantly, the parties in *Langley* were in agreement that Langley

9

was not an employee, and that matter was not at issue in the case*;* therefore, the finding that Langley was a non-employee was dicta. *Id.*

This Court disagrees with its sister courts in the Middle and Eastern Districts. The word "Chapter" is included in both sections of La. R.S. 23:302 at issue. The statute clearly states, "The provisions of this ***Chapter***.... [and] This ***Chapter*** shall not apply .... La. R.S. 23:302. The undersigned recommends that this Court again decline to adopt the definition of "employer" in La. R.S. 23:302, which is located in Chapter 3-A and apply it to La. R.S. 23:967, which is found in Chapter 9. If the legislature intended for the definition found in Chapter 3-A to apply to all of Title 23, it could have drafted a definitions section applicable to it in its entirety. If it intended for Chapter 3-A's definition to apply to Chapter 9, it could have easily reproduced the definition within Chapter 9 or easily stated as such. In the absence of these actions, the undersigned recommends that the term "employer" be used in its ordinary sense, that the exception for non-profit corporations be held inapplicable to the claims at issue in this lawsuit, and that the motion for summary judgment on this basis be **DENIED.**

**For the Reasons Stated Above,**

**It is recommended that Defendant be deemed to meet the minimum number of employees requirement under Title VII, that the definition of "employer" found in La. R.S. 23:302 not be extended to La. R.S. 23:967, and that Defendant's Motion for Summary Judgment be DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of February 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE